## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** : | |
| : | |
| **DAVID ROBLES VAZQUEZ** : | **Case No. 05-02172 (ESL)** |
| : | **Chapter 7** |
| **Debtor** : | |
| ———————————————— : | |
| : | |
| **DAVID ROBLES VAZQUEZ** : | **Adv. Proc. No. 06-00159** |
| : | |
| **Plaintiff** : | |
| : | |
| **vs.** : | |
| : | |
| **GLORIA M. SANTIAGO GONZALEZ** : | |
| **ANGEL RODRIGUEZ VAZQUEZ** : | |
| : | |
| **Defendants** : | |
| ———————————————— : | |

## OPINION AND ORDER

This adversary proceeding came before the court on September 18, 2007 for trial. Mr. David Robles Vázquez ("Debtor/Plaintiff") alleges that Mrs. Gloria M. Santiago González and Mr. Angel Rodríguez Vázquez ("Defendants") have violated the automatic stay provisions of 11 U.S.C.A. § 362(a) by failing to return equipment belonging to him and with actions intended to intimidate and harass him and his family. Defendants allege that it was Debtor who would not pick up his equipment. Prior to the trial the parties submitted proposed findings of fact.

The parties are in agreement as to the following facts:

1. Debtor/Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code on March 11, 2005. The petition disclosed that he did business as "La Manzana Roja."

2. The Chapter 13 plan dated February 28, 2005, proposed to cure pre-petition arrears on a commercial property lease wherein Debtor/Plaintiff operated a business known as La Manzana

Roja.  The premises are owned by lessor, co-Defendant Mrs. Gloria M. Santiago González.  Co-Defendant Mr. Angel Rodríguez Vázquez is Mrs. Santiago's husband.

3.  On March 23, 2005 the debtor moved the court to assume the commercial lease contract with co-Defendant Mrs. Gloria Santiago González.  The court notes that in the motion for assumption of lease the debtor informed that said lease is renewable every year.

4.  The uncontested motion for assumption of lease was granted by the court on May 9, 2005.

5.  Defendants attended the 341 meeting of creditors in the Chapter 13 case, held on June 23, 2005.  Debtor/Plaintiff states that at that time Defendants informed the Chapter 13 trustee of their intention of not renewing the lease contract over the premises where the business La Manzana Roja was located.  Defendants do not include this statement in their findings of fact, although it is not denied.  Instead, Defendants state that they voiced their objection to the plan at that 341 meeting.

6.  The debtor moved for the voluntary conversion to Chapter 7 on November 18, 2005.  The request was granted on November 22, 2005.

7.  Mr. John Zerbe was appointed Chapter 7 trustee and the 341 meeting of creditors under Chapter 7 was held on February 8, 2006.

8.  On February 9, 2006 the Chapter 7 trustee notified the abandonment of the equipment listed in the Schedules remaining at the premises where the business was located; and on July 12, 2006 filed a report of no distribution informing that after fully administering the estate there is no property available for distribution.

9.  On August 1, 2006 the court entered the Discharge Order.

<u>Background</u>

On August 8, 2006 Debtor/Plaintiff filed the instant adversary proceeding. In the complaint Debtor/Plaintiff alleges that after the filing of the Chapter 13 petition Defendants informed him that the lease contract over the premises where his business La Manzana Roja was located would not be renewed, which caused his failure to operate such business. According to Debtor/Plaintiff, due to Defendants' action, his income was reduced and he was forced to request the conversion of his case to one under Chapter 7 on November 18, 2005.

Debtor/Plaintiff further alleges that at the 341 meeting of creditors held in the Chapter 7 case Defendants, displaying a hostile attitude, told the Chapter 7 Trustee, Mr. John Zerbe, that the equipment listed in Plaintiff's Chapter 7 Schedules and located at their premises, would not be surrendered because they were owed money on the lease and for electricity. The Chapter 7 Trustee instructed the Plaintiff to immediately deliver the keys of the premises to his attorney and once the court approved the Trustee's abandonment of the property, the parties would coordinate for the Plaintiff to remove all equipment from said property within 10 days and then deliver the keys to Defendants. Co-Defendant Rodríguez expressed his wish to be present when the equipment was being removed from his premises.

The complaint provides that attorney for Debtor/Plaintiff spoke with co-Defendant Rodríguez to coordinate the removal of the equipment in his presence and that he informed her that he would not surrender the equipment because Plaintiff owed him money. The attorney asked co-Defendant to contact her to coordinate the removal of the equipment. According to Debtor/Plaintiff, Defendants never contacted him nor his attorney, to coordinate the removal of the equipment, and instead changed the locks on the property precluding Debtor/Plaintiff's access to his property.

Lastly, Plaintiff alleges that co-Defendant Rodríguez had been seen by his wife and children in front of their residence and they feared for their safety, therefore he tried twice to file a complaint with the Police Department. Plaintiff asserts that Defendants' referred actions constitute willful violations of the automatic stay provisions of the Bankruptcy Code and that as a result of Defendants' intentional, deliberate and unlawful conduct the Plaintiff is entitled to compensatory damages in the amount of $50,000.00, punitive damages in the amount of $50,000.00 and reasonable costs and attorney's fees. Debtor/Plaintiff further prays for an order directing Defendants to cease and desist from violations of the automatic stay and holding co-Defendant Mrs. Gloria Santiago González in contempt of court for willful violation of the automatic stay order.

Two witnesses testified during the trial, Debtor/Plaintiff Mr. David Robles Vázquez and co-Defendant Mr. Angel Rodríguez Vázquez.

David Robles Vázquez ("Debtor/Plaintiff")

Debtor/Plaintiff, is 33 years old, single, and his main source of income is presently from truck driving. He operated a cafeteria business known as La Manzana Roja from February 2004 to February 2005. The owner and lessor of the premises wherein the business operated is co-Defendant Mrs. Gloria Santiago González.

In January 2005 he visited the law offices of attorney Félix M. Zeno Gloró because he was having financial difficulties in his cafeteria business. Although he was current on the lease payments, he was in arrears with the utilities. Also, the business was not generating sufficient income and the landlord had sent a letter informing the non renewal of the lease. His intention in filing for bankruptcy was to continue operations and submit a payment plan to pay creditors.

- 4 -

However, since the landlord informed at the 341 meeting held in June 2005 during the Chapter 13 case, that the lease would not be renewed, and the lease contract was indispensable to continue operations, he opted to convert to Chapter 7. Later, he admitted that only three payments were made to the Chapter 13 Trustee (the Debtor was in Chapter 13 for eight (8) months). In his Chapter 7 Schedules Debtor/Plaintiff listed his car, furniture and equipment remaining at the place of business, which include ceiling fans, alarm, fridges, table and parts for a machine to roast chicken.

Debtor/Plaintiff admitted the business had ceased operations since February 2005, that is, a month before his bankruptcy filing and one year prior to the 341 meeting of creditors held in the Chapter 7 case. Debtor/Plaintiff testified that at the 341 meeting of creditors held in the Chapter 7 case, co-Defendant only sought to collect his utilities and rent. At that time the Chapter 7 trustee directed him to surrender of keys to his attorney and to coordinate with Defendants the return of the equipment once the abandonment was filed. Co-Defendant Rodríguez stated he wanted to be present when Debtor/Plaintiff picked up the equipment. Debtor admitted he did not contact Mr. Rodríguez for the removal of the equipment and instead sent his consensual wife with another person to remove the equipment, but the premises had two new padlocks. After arrangements were made afterwards for the removal of the equipment, the equipment was finally picked up by Debtor/Plaintiff on April 2007, over one year after the 341 meeting of creditors was held in the Chapter 7 case, and from the abandonment of the equipment. At that time co-Defendant Rodríguez requested the presence of police officers who only observed the surrendering of the equipment.

Debtor/Plaintiff later stated that during the period from February 2005 to February 2006

- 5 -

(during the Chapter 13 case and until the 341 in the Chapter 7 was held) he had the keys of the premises where the business operated but he did not remove the equipment because he thought it no longer belonged to him, that it belonged to the court because it served to guarantee the repayment of his debts. He did admit to having removed a $10 electric mixer and not informing it because the same was not purchased "for the business."

The Debtor narrated incidents when co-Defendant Rodríguez made collection efforts, however, the same took place before the bankruptcy petition was filed, therefore these actions were not in violation of the automatic stay. One incident that Mr. Robles identified as being post petition was when he went to the supermarket warehouse Sam's Club to purchase several items and he learned that his membership card was declined when he presented the same for payment. The alleged reason was that co-Defendant Rodríguez had gone to the service counter and ordered the card inactivated. Debtor/Plaintiff testified that he had to reactivate the card. Debtor stated he did not remember the name of the person he spoke with at Sam's and the Sam's employee who had personal knowledge of the reason why Debtor's card was inactivated was not presented as a witness. The court gives little or no credibility to this incident as Debtor/Plaintiff does not have personal knowledge of the reason why the card was inactivated; he stated that he knew it was Mr. Rodríguez' doing because someone told him.

Also, Debtor asserted that Mr. Rodríguez would come near his house and watched his family from afar in the early morning hours, which scared his wife and children and worried him as he went to work leaving his family behind. But, he never filed a complaint with the Police Department.

Debtor concluded his testimony by stating that Mr. Rodríguez was very angry and twice

- 6 -

he told him that he would not give him the equipment until he paid what he owed. According to Debtor, Mr. Rodríguez later stated that if he wanted his equipment he had to withdraw the complaint against him.

Mr. Angel Rodríguez Vázquez (co-Defendant)

Mr. Rodríguez is a 77 year old man, legally married to co-Defendant Mrs. Gloria M. Santiago, the owner and lessor of the commercial property leased to Debtor. His wife decided not to renew the contract as Debtor was in arrears and the business was not operating even before the filing of the bankruptcy petition. He attended the 341 meeting of creditors under Chapter 13, together with his wife. Upon questioning by the presiding officer he answered that there was no intention to renew the lease contract. His wife indicated that she wanted the space more than the money. At the time they had a client, a bakery that wanted to lease the property; but due to the delays they rented elsewhere. He was also present at the Chapter 7 meeting of creditors held in February 2006, when the Chapter 7 trustee indicated that the property should be removed within 10 days and in his presence. Debtor/Plaintiff never called him to coordinate a meeting to remove the property.

He was informed by neighbors that Debtor and/or his consensual wife went to remove the equipment. So he went to the premises and found the door opened. He proceeded to secure the place with locks. He stated that there was an agreement to pick up the property on December 23, 2006, but no one appeared. Debtor did not contact him between December 23, 2006 and March 30, 2007. On March 30, 2007 the parties agreed for the pick up to occur on April 7, 2007. Debtor removed the equipment on April 7, 2007.

Mr. Rodríguez specifically denied intervening with Debtor's Sam's membership card,

- 7 -

meeting his wife at Sam's, or visiting Debtor's house. He denied cutting off electric power. It was the Electric Power Authority that cut off the service for non payment of electricity bills.

Exhibits

Defendants presented the following exhibits. One is a letter addressed to counsel for Debtor from counsel for Defendants, dated January 11, 2007 informing that Debtor did not appear on the agreed date of December 23, 2006 to pick up his equipment or called to inform he would not be present at that time. On March 12, 2007 (two months later) counsel for Debtor responded that what was stated in the letter was not the agreement between the parties, that his client is more than willing to make arrangements to pick up his equipment. Counsel for Defendants responded on March 19, 2007 stating that Debtor had been given various opportunities to pick up his property and had not done so, and finished stating that Debtor can call co-Defendant Rodríguez to establish a date and time mutually acceptable to pick up the equipment.

Applicable Law

The automatic stay provided in 11 U.S.C. §362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the mere filing of a bankruptcy petition. In re Soares,107 F.3d 969, 975 (1st Cir. 1997). The automatic stay is extremely broad in scope and "applies to almost any type of formal or informal action against the debtor or the property of the estate. The stay applies to all entities." [Footnotes omitted] 2 Lawrence P. King, et al, Collier on Bankruptcy, ¶362.03, 15th ed. 2001, at page 362-13.

The injunctive restraint imposed by the automatic stay emanates from an act of Congress and not from the bankruptcy courts. Courts, federal and state, are bound by the provisions of the

- 8 -

automatic stay as they are entities within the meaning of the Bankruptcy Code. Norton Bankruptcy Law and Practice 2d, §36:5, page 36-25. In 1984, the Bankruptcy Code was amended to add the following phrase at the end of section 362(a)(3): "or to exercise control over property of the estate." The amendment further broadens the scope of the automatic stay as it clarifies that physical possession is not required. Id. In assessing violations of the automatic stay and the discharge injunction, the core issue is whether the creditor acted in such a way as to "coerce" or "harass" the debtor improperly. In re Pratt, 462 F.3d 14 ( 1st Cir.2006).; In re Diamond, 346 F. 3d 224, 227 (1st Cir. 2003).

### Discussion

After considering all the evidence presented, the court concludes that there was animosity between the parties; on the Defendant's part due to Debtor's failure to make the lease payments and surrender the leased premises; and on Debtor's part for Defendants' unwillingness to renew the lease contract and their persistent efforts in collecting the amounts owed. The failure to renew the contract was the main reason why the Debtor/Plaintiff could not re-open their cafeteria. However, the court cannot conclude that Defendants incurred in a willful violation of the automatic stay. It was more an exhibition of mutual contumacy than one party's reticence to comply with the mandates of the Bankruptcy Code.

While in Chapter 13 Debtor had the keys to the business premises and chose not to take his equipment. After the 341 meeting was held in the Chapter 7, in February 2006, Debtor/Plaintiff admitted that he never contacted Defendants to coordinate retrieving his equipment. No documentary evidence, such as communications with Defendants, was presented

-9-

to support the allegation that Defendants refused to surrender the equipment.  Instead, evidence was presented showing that Defendants were eager to coordinate the removal of the equipment with Debtor.  Furthermore, Defendants were justified in locking their property to protect it, in any event, the removal of the equipment held in Defendants' property had to be done with their knowledge and in coordination with them.

Although Debtor/Plaintiff made the allegation in the complaint that his counsel contacted co-Defendant Rodríguez to coordinate the removal of the equipment and Mr. Rodríguez refused to surrender the equipment, this allegation remains unsupported by the testimony of Debtor's attorney.  Also, Debtor made allegations that co-Defendant Rodríguez would appear near his home in the early morning hours which made him and his family fear for their safety.  This court cannot conclude that the presence, alone, of a 77 year old man, without proving a history of violence or a criminal record, near Debtor's home, constitute a willful violation of the automatic stay.  Furthermore, it is noteworthy that Debtor admitted that he never filed a complaint with the Police Department against the Defendant for his action and that co-Defendant Rodríguez denies that he ever went near Debtor's house.  Under these circumstances this court is reluctant to lend credit to Debtor's assertions as we are at a loss as to why Mr. Rodríguez would find it useful to proceed in such a way.

- 10 -

Conclusion

In view of the foregoing, the court finds that there was no violation of the automatic stay and orders the complaint dismissed.  The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of November 2007.

ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge

- 11 -